EMPLOYERS' LIABILITY ASSUR. CORP. LIMITED, *v.* AMERICAN PACKING CO.

[88 South. 481, No. 21757.]

1. INSURANCE. *Injury to employee held not within "vessel hazard" clause of accident insurance contract.*

In an employer's accident insurance contract excluding liability for injury to employees of a packing plant received through "vessel hazard," where the employee was repairing an idle boat at plant premises and was injured by a kettle top in the plant building while on mission in connection with repairing the boat, such injury was not within the "vessel hazard" clause.

2. INSURANCE. *Employee in designated class held covered where premium determined on estimated compensation of employees.*

In an employer's accident insurance contract an employee in a designated class is covered by the policy where the premium is to be determined and paid upon basis of estimated compensation of employees.

APPEAL from circuit court of Harrison county.

HON. D. M. GRAHAM, Judge.

Action by the American Packing Company against the Employers' Liability Assurance Corporation, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

*Carl Marshall,* for appellant.

The court's attention is directed to the fact that the contract embodied in the policy is the law of the case, to be construed by the court as the law, and as the law of the case applied to the facts alleged in the declaration. An insurance policy stands upon exactly the same footing as other written contracts and is construed by the same rules and standards of construction. The doctrine that a policy of insurance must be construed most strongly against the insurer does not alter the rules of contract construction where the terms of the policy are plain and unambiguous in their meaning. Says Mr. Justice Reed, in delivering the opinion of the supreme court of Mississippi, in *Penn Mutual Life Insurance Company* v. *Carrie B. Gordon,* 104 *Miss.* 270, 61 So. 311:

"What is a policy of insurance? It is the instrument setting forth the contract of insurance. It is the evidence of the agreement between the insurer and the insured. Its purpose is to show the considerations, the terms the contract of indemnity, the privileges, the benefits, and the conditions. The usual rules for construing contracts should be applied in considering contracts of insurance."

And, in the language of Mr. Justice Sykes, in *American Life and Accident Insurance Company* v. *Nirdlinger* (Miss.) 73 So. 875: "These contracts of insurance, where the terms are plain and unambiguous, are to be construed like any other contracts between parties. It is only where the terms are ambiguous or doubtful that the doubt is to be resolved in favor of the insured and against the insurer." *Mississippi Mutual Insurance Company* v. *Ingraham,* 34 Miss. 215; *Cooperative Life Association of Mississippi* v. *Leflore et al.,* 53 Miss. 1. The terms of the contract is the law of the contract. Supreme Court of Mississippi in *Williams* v. *Luckett,* 26 So. 697.

Hence, the court, and not the jury must construe or interpret a written contract. It is for the court to determine the law of the case which is the meaning of the terms

of the contract. *Fairley* v. *Fairley,* 38 Miss. 280. And the controlling purpose in construction of all contracts should be to find the intention of the parties. *Penn. Mutual Life Insurance Company* v. *Carrie B. Gordon, supra.*

The true intention of the parties must be gathered from the entire instrument, and not from isolated parts thereof. Id. and, there being nothing unlawful or opposed to public policy in the contract, the court must give effect to its terms as the law of the case.

A refusal of the court to give effect to them is to make a contract which the parties have not made for themselves. *Jones* v. *Mississippi Farms Company* (Miss.), 76 So. 880; 1 Joyce on Insurance (2 Ed.), Sec. 209. The plain language of an insurance policy must be given effect; for it is the agreed law governing the obligations of each party to the other under the contract embodied in the policy. We beg to adopt the logic of the Kentucky court of appeals holding in accord with our own supreme court, in *Spring Garden Insurance Company* v. *Imperial Tobacco Company of Kentucky,* 116 S. W. 234, 20 L. R. A. (N. S.) 277; *Cyracuse Malleable Iron Works* v. *Travelers Insurance Company,* 157 N. Y. S. 572, 94 Misc. Rep. 411.

So, we submit, the plain terms of this contract of insurance, expressed in the policy, being neither unlawful nor against public policy, is the law of the case at bar, solely governing the determination of the question whether plaintiff should recover in this action against defendant; and the question whether the allegations of the declaration taken with the exhibits thereto, are sufficient to show, when admitted to be true, the right of plaintiff to recover from defendant.

We respectfully contend that defendant's demurrer should be overruled, in that the allegations of the declaration, taken with the exhibits thereto show that plaintiff is not obligated by the policy, and the facts of the case, to indemnify or insure . . . defendant . . . against loss from the liability imposed by law in said action of Charles Breal Exhibit B and there are two clear and dis-

tinct reasons why plaintiff is not so contractually obligated, under the facts admitted by the demurrer to exist: (1) Because no accident to the said Breal, is or was within the purview and contemplation of the contract of insurance; and (2) Because Breal's compensation was never included in the estimate of compensation set forth in the schedule of warranties in the policy.

While these two reasons are inter-related, Breal's compensation not being included in the estimate of compensation upon which the premium for the policy was based and charged, because an accident to him was not covered; and, conversely, an accident to Breal was not covered by the policy because his compensation was not included in the estimate, we ask leave to take up the two points separately.

We again ask the court's attention to the familiar and well-established rule that the policy must be interpreted or construed as a whole, all clauses being read together. *Penn Mutual Life Insurance Company* v. *Carrie B. Gordon,* 104 Miss. 270, 61 So. 311; *Spring Garden Insurance Company* v. *Imperial Tobacco Company of Kentucky,* 116 S. W. 234, 20 L. R. A. (N. S.) 277.

With this doctrine of interpretation and construction before us, the matter seems easy of decision. The general insuring clause on the first page of the policy reads that, in consideration of the premium, the plaintiff agrees to indemnify defendant against loss from the liability imposed by law upon the assured (defendant) for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any employee or employees of the assured at the location described in the schedule, or the premises or ways adjacent thereto, by reason of the operation of the trade or business in the schedule, including the making of repairs and such ordinary alterations as are necessary to the care of the premises and plant and their maintenance in good condition.

What was the operation of the trade or business described in the schedule, against loss from the injury to

employees by reason of which operation of trade or business, including necessary repairs and alteration therein, defendant was indemnified? The schedule reads, in describing the trade or business the employees in which were covered:

"All operations incidental to the business of cannery. No can manufacturing and no vessel hazard."

It is clear, then, that the policy expressly excepted from the coverage and application the operation of the trade or business constituting a vessel hazard, including repairs and alterations made therein. Defendant's employees engaged to repair and alter vessels, or to perform other labor constituting a vessel hazard, are expressly reserved from coverage. Likewise, losses from accidents resulting in bodily injury to defendant's employees by reason of the operation of the trade or business of repairing or altering vessels, or to perform other work constituting vessel hazards are expressly reserved and excepted from coverage. That is the reason Breal's compensation was not included in the estimate upon which the premium was based. Why pay a premium upon him when an accident to him was not insured against?

That repairing a vessel is an employment, the risk of injury in which is a vessel hazard, is too obvious to warrant discussion. A gasoline launch is a vessel. 8 Words and Phrases, 7296, et seq; 40 Cyc. 1916.

The work being performed by Breal at the time of his injury was so closely associated with the vessel that his compensation for this very work was secured by a lien on the vessel, paramount to all other debts of defendant, and binding the vessel therefor, even though it had passed into the hands of a *bona-fide* purchaser for a valuable consideration, and without notice. Section 3085, Code of 1906; *Valverde* v. *Spottswood,* 77 Miss. 912, 28 So. 720.

If any meaning at all be given to the term vessel hazard, hazard incurred in the work of repairing a vessel falls within the term; and the risks of employment solely to re-

pair a boat must be a vessel hazard, or this clause of the policy is without meaning whatsoever.

And it must be borne in mind that Breal was employed by defendant for the sole purpose of repairing the vessel. He was working at what, when injured? Repairing a vessel. Why did he go near the kettle? To get an article. To what use did he desire to put this article? To further his work of repairing the vessel. Why was defendant liable to him for his injury? Because defendant negligently failed to provide him with a safe place in which to perform his work. A safe place in which to perform his work? His work of repairing the vessel. Were there any duties defendant owed Breal as his employer that defendant could breach, other than those duties incident to his employment to repair a vessel? None whatever. Did Breal have any connection with defendant's business or plant other than his employment to repair a vessel? None whatever.

The policy in this case is an employer's liability policy. The work of repairing a boat is a vessel hazard. The policy expressly excludes vessel hazard from its coverage. Breal was employed only to repair a vessel. How then can it be said that an accident to Breal, as an employee, was covered? Breal's action against defendant, based upon a relationship of master and servant, could be based only on violations of the duties that defendant owed Breal, as an employee, solely to repair a vessel. Vessel hazards being expressly excluded by the policy from coverage, how can it be seriously contended that any loss sustained in Breal's action was insured against?

Defendant's demurrer, ignoring the exclusions of vessel hazards from coverage, argues that the policy must cover the loss, because Breal's work of repairing a vessel to be used in catching shrimp to be canned was incidental, within the meaning of the policy, to the business of the cannery. This position is obviously unsound. In the first place, if repairing the vessel were an operation incidental to the business of cannery, still it is an operation expressly ex-

cluded, from, the coverage of the policy. In the second place, the work of repairing the vessel is too remote from the main object of defendant's plant to be considered an operation incidental thereto within a reasonable interpretation of the policy. A case in point is *Rust Lumber Company* v. *General Accident Fire and Life Assurance Corporation,* 134 La. 310, 64 So. 122.

In the *May Creek Logging Company* v. *Pacific Coast Casualty Company* (Washington), 144 Pac. L. R. A. 1915C. 155, the policy covered all operations dependent upon, or connected with, the insured's logging business. It was held not to cover loss to the insured on account of injury to an employee from the incompetence of the company's regular surgeon, although the injury for which the employee was being treated by the surgeon arose in the course of the employee's work. *Roth Tool Company* v. *New Amsterdam Casualty Company,* 88 C. C. A. 569, 161 Fed. 709; *Home Mixture Guano Company* v. *Ocean Accident and Guarantee Corporation,* 176 Fed. 600; *People's Ice Company* v. *Employers' Liability Assurance Corporation, Limited,* 161 Mass. 122, 36 N. E. 754; *Wollman* v. *Fidelity & Casualty Company,* 87 Mo. App. 677; *Kelly* v. *London Guarantee and Accident Company,* 97 Mo. App. 623, 71 S. W. 711. And we must again ask the court's attention to the fact that the agency means, or manner of causation of the accidental injury is not the sole criterion by which coverage is judged. It is a question of whether the injured employee was covered; and whether the injury occurred to him while working at a business insured by the policy. In the case before us for consideration, the injured employee, Breal, belonged to a class of employees who were not covered, they working upon vessels, a branch of defendant's enterprise expressly excluded from the operation of the policy, and he was performing the work of an expressly excluded operation when injured. *Maryland Casualty Company* v. *Little Rock Railway & Electric Company,* 92 Ark. 206, 122 S. W. 994; *United Zinc Companies* v. *General Accident Assurance Corporation,* 125

Mo. App. 41, 102 S. W. 605; *Kelly* v. *London Guarantee & Accident Company, supra; Frank Unncher Company* v. *Standard Life Accident Insurance Company,* 99 C. C. A. 490, 176 Fed. 16; *Tozer* v. *Ocean Accident and Guarantee Corporation,* 94 Minn. 478, 103 N. W. 509; *Buffalo Steel Company* v. *Aetna Life Insurance Company,* 106 N. Y. Sup. 977, affirmed in 156 New York App. Div. 453, 141 N. Y. Supp. 1027, holding that where the policy excluded coverage of accidents to employees below a certain age, it was immaterial that the injured employee's age bore no part in the causation of the accident, or that the accident was caused by a covered employee's negligence; since the policy (as in the case before us) expressly 'excluded liability for any injury to the particular employee that was injured and see *Fidelity and Casualty Company of New York* v. *Palmer Hotel Company,* 179 Ky. 518, 200 S. W. 923, L. R. A. 1918C. 808.

But this whole matter may be concluded by the sound statement of the law given in 14 Ruling Case Law, section 442, upon page 1266:

"Liability Insurance. Primarily it may be said that to authorize a recovery under an employer's liability policy the injured employee must have been engaged in the business insured or in some work incidental thereto."

In the case before us, Breal, the injured employee, not only was not engaged in the business insured when he received his injury, but was actually engaged in a business expressly not insured and was insured while performing the work of that business. Otherwise, he could not have brought action upon a relationship of master and servant. For to repair a vessel was all he was employed to do. Does this not conclude the question raised by defendant's demurrer? *Andrus* v. *Maryland Casualty Company,* 91 Minn. 358, 98 N. W. 200; *Fidelity and Casualty Company* v. *Phoenix Manufacturing Company,* 40 N. C. C. A. 614, 100 Fed. 604; *East Carolina Railway Company* v. *Maryland Casualty Company,* 145 N. C. 114, 58 S. E. 906.

Condition C. of the policy (top second page) express-
ly provides that: "This policy does not cover on account of
injuries or death caused to any person unless his compen-
sation is included in the estimate set forth in the schedule.

Condition C of the policy in plain, unmistakable lan-
guage makes it a prerequisite, or condition of plaintiff's
liability upon the policy, that the injured employee's com-
pensation, or wages, be included in the estimate set forth
in the schedule.

The declaration directly and properly pleads and alleges
that the compensation, or wages, of Charles Breal, the
injured person, or employee, to quote from the declara-
tion itself: "Was not, at any time, and is not now embraced
or included within the estimate set forth in the schedule
forming a part of said contract and policy of insurance."

Upon this demurrer, therefore, the fact of the non-inclus-
ion of Breal's compensation, or wages, in the estimate set
forth in the schedule must be taken to exist, and be abso-
lutely true. Accordingly, unless this valid and reasonable
condition of the policy is to be written out of it, and a new
contract made for the parties by the court, loss to defend-
ant because of an injury to Charles Breal is not covered,
or indemnified against by the policy.

To quote further from 14 Ruling Case Law,
section 442, upon page 1266: "The fact that
the wages of a laborer are included in the pay-
roll upon which the premium for a liability policy is
based may stamp him with the character of an employee
within the policy, and the fact that he is so included may be
made by the contract a requisite to any liability." *East
Carolina Railway Company* v. *Maryland Casualty Com-
pany, supra; United Zinc Companies* v. *General Accident
Assurance Corporation, supra;* and see *Employers' Indem-
nity Company* v. *Kelly Coal Company,* 149 Ky. 712, 149 S.
W. 992, 41 L. R. A. (N. S.) 963, distinguishing the facts
of a case of the type now before us from those involved in
*Dives* v. *Fidelity and Casualty Company,* 206 Pa. 199, 55
Atl. 950.

Nor is this a case such as that of *Stevens* v. *Fidelity and Casualty Company*, 178 Ill. App. In the case before us there was no simple accident in failure to include in the entimate the wages of an employee otherwise within, and covered by the policy. In the instant case the compensation, or wages, of Breal was never included.

Nor is this a case such as that of *Stevens* v. *Fidelity and Casualty Company*, 178 Ill. App. In the case before us there was no simple accidental failure to include in the estimate the wages of an employee otherwise within, and covered by the policy. In the instant case the compensation, or wages, of Breal was never included in the estimate upon which the premium is based and it could never be included, because Breal's employment was entirely in a branch or department of defendant's business, whether incidental to the main operation or not, the employees in which were excluded from coverage by the express terms of the policy evidencing the contract of insurance. The policy never covered Breal from its inception until he left the employ of defendant. Therefore, he cannot be covered now, or at any other time. *United Zinc Companies* v. *General Accident Assurance Corporation, supra; London Accident and Guarantee Corporation* v. *Ogelsby*, 231 Pa. 186, 80 Atl. 57. And by the express terms of condition C of the policy, defendant agreed that there should be no coverage of Breal unless his compensation was included in the estimate, which was not done. *East Carolina Railway Company* v. *Maryland Casualty Company.* (N. C.), 58 S. E. 907. In Mississippi, as we have pointed out, the disposition of the courts is to give effect to all conditions, limitations, reservations, and stipulations in a contract of insurance, treating and interpreting it by the rules applicable to all other written agreements, and construing it as a whole. *Metropolitan Casualty Company* v. *Shelby*, 76 So. 839.

And so, we submit, in the case at bar, if meaning is to be given to the plain terms of the contract, if effect is to be accorded its valid conditions and exceptions, and if

no new contract is to be made for the parties by the court, plaintiff was not, and is not obligated to indemnify defendant for any loss on account of the action of Charles Breal against defendant, and the demurrer should have been overruled. For this reason we ask that the judgment appealed from be reversed and the cause remanded for proper trial upon its facts.

*White & Ford,* for appellee.

A policy of insurance is a contract and is to be construed by the rules relating to the construction of contracts generally, except that policies of insurance are construed most favorably to the insured. In determining what was the intention of the parties in making the contract, the whole instrument must be looked to rather than that any particular part should be isolated and undue importance attached thereto. Taking the contract in this case as a whole, it is clear that the insurer intended to indemnify the insured against all liability imposed by law for damages on account of bodily injuries sustained by any of its employees during the period of one year from the date of the contract, and the only hazard excluded from the contract, was vessel hazard. For this insurance, the insured agreed to pay, and did pay a premium, the amount of which was fixed at a certain rate based on the compensation paid to the employees.

We have already quoted the principal part of the contract as well as such of the conditions and warranties constituting parts thereof as are material to the determination of the issue before us. Looking to the principal part of the contract we find that the employees covered are identified by the following requirements: (1) Any employee of the insured. (2) While within or upon the premises of the insured or the premises or ways adjacent thereto. (3) By reason of the operation of the trade of business described in the schedules. (4) Including the making of repairs and such ordinary alterations as are necessary to

the care of the premises and plant. (5) Including drivers and drivers' helpers. (6) Within a period of twelve months beginning on the 29th day of January, 1919.

Applying these requirements to Breal, we find that his case meets every one of them. Counsel for appellant contend that he was not covered (a), because his compensation was not included in the estimate, and (b) because he was not the kind of employee that the contract insured against.

The precise question then is, is the repairing of a gasoline boat used for the purpose of catching shrimp an operation incidental to the business of a shrimp factory? While counsel for appellant have been diligent in citing causes applying to the general law of insurance, they have cited no case covering this precise question.

Taking up the general attitude of the courts towards contracts of insurance, we find it universally held, and especially by the supreme court of Mississippi that "Insurance policies are construed most favorably to the insured." see *Germania Life Ins. Co.* v. *Bouldin,* 100 Miss. 660; *W. O. W.* v. *Bunch,* 115 Miss. 512. Under the terms of the policy, it would make no difference what sort of employee was injured, if it was a vessel hazard that caused the accident, the case would not be covered. On the other hand we contend that by the terms of the policy, any sort of employee otherwise covered by the contract would be insured against if he was hurt while working within the scope of his employment and not by a vessel hazard. In other words, it was the hazard that was excluded and not the employees that might be called upon to repair the vessels while at the plant, as they might be called upon to repair the process kettle, the oyster cars, and canning machines or any other instrumentality around the plant.

Before citing the authorities on which we rely, we shall first discuss those cited by opposing counsel. A reading of the several cases on the subject of liability insurance discloses clearly that the decision turns largely on the terms of the policy. We realize that it is hard to find a

case exactly like that presented here.   In other words, "a gray mule" case, and both sides have to rely to a great extent on similarity in principle.

We shall not deal with the several cases cited by counsel which deal with insurance contracts generally.   We agree with counsel that the contract must be interpreted as written but it is the law that they are construed most favorably to the insured.   Counsel say at page 15 of their brief that repairing a vessel is an employment, the risk of injury in which a vessel hazard is too obvious to warrant discussion..   A gasoline boat is a vessel.   8 Words & Phrases, 7296 et. seq. 4 Cyc. 196.

There is no doubt that a gasoline launch is a vessel, but the authorities cited by counsel do not show that repairing an engine alongside of a wharf and getting hurt by a process kettle in a factory is a vessel hazard.

Counsel cite the case of *May Creek Logging Company* v. *Pacific Coast Casualty Company*, 144 Pac. L. R. A. 1915C. 155.   That case held that an employer's liability insurance policy would not cover an injury sustained by an employee through incompetence of the company's regular surgeon. That case is manifestly correct for the reason that the hazard did not arise out of the servant's employment.

Counsel cite the case of *Roth Tool Co.* v. *New Amsterdam Casualty Co.* 88 C. C. A. 569, 161 Fed. 709.   In that case the contract expressly excluded cases of injury caused by explosion, an employee having been injured through the explosion of a pipe that was filled with explosive material.

The case of *Home Mixture Guano Company* v. *Ocean Accident and Guaranty Company*, 176 Fed. 600, cited by counsel involved the question of liability for an injury sustained in the rebuilding of a burned factory, whereas the policy covered only ordinary repairs, but excluded new construction.

The case of *Peoples Ice Co.* v. *Employers' Liability Assurance Co. Ltd.*, 161 Mass. 122, 36 N. E. 754, cited by counsel, involved a policy which covered the business of

cutting and storing ice. An employee engaged in building a storage house was injured by the building collapsing and the court held that the policy did not cover such case for the reason that the building of new structures was excluded from the policy.

The case of *Wollman* v. *Fidelity and Casualty Co.*, 87 Mo. App. 677, cited by counsel, involved a policy that insured a company against accidents occurring in the dry goods business. An employee was hurt while operating a machine for the polishing of rusty cutlery, and the court held that this was not a part of the dry goods business and not within the terms of the policy.

Counsel cite the case of *Kelly* v. *London Guarantee & Accident Co.*, 97 Mo. App. 623, 71 S. W. 711. It was there held that an employee injured by the personal negligence of one member of a firm of partners while on his own personal business was not covered by a policy which insured the firm as to partnership business.

In the case of *Maryland Casualty Co.* v. *Little Rock Ry. & Elec. Co.*, 92 Ark. 206, 122 S. W. 944, cited by counsel, it was held that where a policy was issued to one company and later assigned to another, that it did not cover new kinds of servants employed by the assignee. Counsel cite the case of *U. S. Zinc Co.* v. *General Accident Insurance Co.*, 125 Mo. App. 41, 102 S. W. 605. In that case a list of all the employees by name to be covered by the policy was attached thereto. The court held that the policy did not cover the case of an employee whose name was not on the list.

Counsel cite the case of *Frank Unneher Co.* v. *Standard Life Accident Co.*, 46 C. C. A. 490, 176 Fed. 16. The policy there expressly excluded liability to any person under age employed in violation of law. The court held that injuries to a child under age and employed in violation of law was not covered. The same can be said about *Tozer* v. *Ocean Casualty & Guarantee Company*, 94 Minn. 478, 103 N. W. 509, which was also a child case.

The case of *Buffalo Steel Co.* v. *Aetna Life Insurance Co.*, 136 N. Y. Supp. 977, also involved injuries to a child employed in violation of law. The case of *Fidelity and Casualty Co. of N. Y.* v. *Palmer Hotel Co.*, 179 Ky. 518, L. R. A. 1918C, page 808, cited by counsel, involved an elevator insurance contract. The policy provided that there should be no liability for injuries sustained while the elevator was being operated by a person not legally authorized and competent to operate an elevator. The court held that where a legally incompetent person was operating the elevator there was no liability.

Counsel cite the case of *Andrus* v. *Maryland Casualty Company*, 91 Minn. 358, 98 N. W. 200. That case, as we read it, sustains our position, and we think counsel must have cited it inadvertently. In the case of *Fidelity and Casualty Co.* v. *Phoenix Mfg. Co.*, 40 C. C. A. 614, 100 Fed. 604, cited by counsel, the court held that the question of coverage of a particular employee should be left to the jury.

Counsel cite the case of *East Carolina R. R. Co.* v. *Maryland Casualty Co.*, 145 N. C. 114, 58 S. E. 906. A very unusual sort of insurance policy was involved there. The court in construing the terms of the policy found that the wages for both the person injured and the person whose negligence caused the injury must be included in the policy. It seems in that case that the accident was due to the negligence of the president of the company, whose wages were not included in the contract, and whose negligence was expressly not insured against.

The case of *Employers' Indemnity Company* v. *Kelly Coal Co.*, 149 Ky. 712, 41 L. R. A. (N. S.) 963, cited by counsel held that a policy did not cover injuries sustained by a servant of an independent character. None of the foregoing authorities as we construe them, cover the point involved here. While it is difficult to find any case exactly like this one, we believe that the authorities which we shall now proceed to cite are as near in principle at least as exist in the books. *Fidelity and Casualty Co.* v.

*Lone Oak Cotton Oil & Gin Company,* 80 S. W. 541, 35 Tex. Civ. App. 260; *Hoven* v. *Employers' Liability Assurance Cor.,* 93 Wis. 201, 67 N. W. 46, 22 L. R. A. 388. We also rely upon the following decisions from the courts of other states: *Kingston Cotton Mills* v. *Liability Assurance Cor.,* 161 N. C. 562, 77 S. E. 682; *Travelers Insurance Co.* v. *Bright,* 24 Ohio C. C. 441; *London Guarantee and Accident Co.* v. *Oglesby,* 231 Pac. 186, 80 Atl. 57; *Dives* v. *Fidelity etc. Co.* 206 Pa. 199, 55 Atl. 950; *Cashen* v. *London Guarantee Co.,* 187 Mass. 188, 72 N. E. 957; *Andrus* v. *Maryland Casualty Co.,* 91 Minn. 358, 98 N. W. 200. As hereinabove contended, we think the intention of the parties was clear to insure the American Packing Company as to all of its employees, and only the two hazards of can manufacturing, and vessel, were excluded.

We have not been able to find any case construing the term "vessel hazard," and we assume that our friends on the other side cannot find any on this point, or they would have cited it. It is therefore a matter of interpreting the contract according to the ordinary meaning and acceptation of the words used therein. Every one knows that different operations or industries vary as to hazard, and further, that insurance rates vary in accordance with the hazard. The perils of the sea and dangers of navigation are entirely different hazards from that of a canning factory. Again, the dangers incident to can manufacturing are different and probably greater than in a factory where sea products are packed. Vessel and can manufacturing hazards being different than the one insured against, it is but natural that they should be excluded. We submit that the terms of the policy mean simply that if the insured's employee got hurt on account of a peril of navigation or danger of the sea, or while manufacturing cans, there would be no coverage under the policy because that was something not insured against. On the other hand, it is clear that Breal was not hurt by virtue of a peril of the sea or danger incident to navigation or to the operation of a vessel, but was hurt by a process kettle which was di-

rectly a part of the equipment of the canning factory. Suppose an oyster shucker or an employee whose duty it was to put shrimp in cans, was assigned to repair a gasoline engine in one of the boats lying along side the wharf and hurt there. Would our friends on the other side contend that he would not be covered under the policy. We have still a stronger case here because Breal, an employee, was hurt by a hazard of the factory, and any other employee whatever his duties were might have been hurt the same way. The vessel hazard therefore that was excluded by the policy had nothing to do with Breal's injury.

Bearing in mind always that under the terms of the policy, the insurer reserved the right to collect a premium on Breal's compensation and had a perfect right so to do under the contract, we submit that it is immaterial whether his compensation was actually included at the time the policy was issued or not.

So far as the declaration shows, Breal was not in the employ of the insured when the policy was taken out. We submit therefore that the court below rightfully sustained the demurrer to the declaration.

HOLDEN, J., delivered the opinion of the court.

This case involves the construction of an employer's liability insurance contract between the appellant and appellee. The appellant assurance corporation issued to the appellee packing company an insurance contract wherein it agreed to indemnify appellee against loss or damage from liability imposed by law for damages on account of bodily injuries sustained by its employees at its canning plant.

Following this, Charles Breal, an employee of appellee, was injured in the plant of the appellee and sued appellee to recover damages. The assurance corporation defended this suit under the contract, and by consent of all parties settled the case for three thousand, five hundred dollars, with the understanding that all of the legal rights of both

parties, the assurance corporation and the insured packing company, appellee, should be reserved, and a decision in the courts would be had to determine whether the assurance corporation was liable in the case under its contract of insurance.

Briefly stated, the facts are that the insured appellee packing company was engaged in the business of canning and packing shrimp at Biloxi, where it maintained a plant in which a large kettle for cooking shrimp and other products was kept and used. The insured had numerous employees engaged in its business of canning and packing shrimp. The injured employee, Charles Breal, was performing the duty of repairing a gasoline boat belonging to the insured packing company and used by it in the shrimp business, which boat was idle and was moored at the plant of the packing company for repairs and was being repaired by the said employee Breal. Immediately prior to being hurt Breal was working on this gasoline boat, and, having left it, was going through the packing room of the plant to get some article to be used in repairing the boat, when the cover of a large process kettle fell upon him and caused his injury, for which he sued, and is the original cause of the present suit.

The suit by Breal was predicated on the ground of liability for negligently failing to furnish a safe place in which to work, in that the top of the process kettle was so insecurely fastened to the kettle that it was liable to fall off and injure persons near it.

The appellant assurance corporation contends that it is not liable to the appellee packing company for the injuries to Breal, because: First, the insurance contract did not cover an injury to the employee Breal, as no premium was charged on the basis of his compensation, as it was not included in the schedule; and, second, because the employee Breal was injured while engaged in a "vessel hazard," which the policy expressly provides is not covered in the insurance contract.

The appellee contends in opposition: First, that the employee Breal was not injured by a "vessel hazard;" and, second, that the terms of the insurance contract included the employee Breal as a risk, as he was an employee within the designated class of employees mentioned and included under the terms of the insurance policy.

We shall here set out the material parts of the insurance contract, which are as follows:

"In consideration of sixty six and 80/100 dollars ($66.80) estimated premium and the warranties of the assured hereinafter set forth the Employers Liability Assurance Corporation, Limited, of London, hereinafter called the corporation, hereby agrees to indemnify the American Packing Company of Biloxi, county of Harrison, state of Mississippi, hereinafter called the assured, against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any employee or employees of the assured, while within or upon the premises of the assured at the location described in the schedule, or the premises or ways adjacent thereto, by reason of the operation of the trade or business described in the schedule, including the making of repairs and such ordinary alterations as are necessary to the care of the premises and plant and their maintenance in good condition, and including drivers and drivers' helpers wherever employed in the service of the assured, provided such bodily injuries or death are suffered as the result of accidents occurring within the period of twelve months, beginning on the 29th day of January, 1918, at noon, and ending on the 29th day of January, 1919, at noon, standard time, at the place where this policy has been countersigned, subject to the following conditions."

Condition A limits the liability of the insurer to $5,000 in any personal injury case and $10,000 in a death case.

Condition B provides as follows:

"The premium is based on the entire compensation of the employees of the assured mentioned in the schedule,

during the period of this policy. If such compensation exceeds the sum set forth in the schedule, the assured shall pay the corporation the additional premium earned when determined; if such compensation is less than the sum set forth in the schedule, the, corporation will return the unearned premium when determined; but the corporation shall receive or retain not less than twenty-five dollars it being agreed that this sum shall be the minimum earned premium."

Condition C is as follows: "This policy does not cover on account of injuries caused by any person unless his compensation is included in the estimate set forth in the schedule, or to or caused by: (1) Any child employed by the assured contrary to law, or any child employed under fourteen (14) years of age where no statute restricts the age of employment; (2) any person in connection with the making of additions to or structural alterations in or the construction of any building or plant, or in connection with wrecking or demolition of any building or plant, or any part thereof, unless a written permit is granted by the corporation specifically describing the work and an additional premium paid therefor."

Condition K is as follows: "The assured shall, whenever the corporation so requests, furnish the corporation with a written statement of the amount of compensation earned by his employees during any part of the period of this policy, and at the end of the period of this policy the assured shall furnish the corporation with such statement covering the full period of this policy. Any of the corporation's authorized representatives shall have the right and opportunity upon the request of the corporation to examine the books and records of the assured as respects compensation earned by the employees of the assured, provided such examination to be made within twelve months after the expiration of this policy and the assured shall render reasonable assistance; but the rendering of any estimate or statement or any settlement shall not bar the

examination herein provided for nor the corporation's right to additional premium."

The schedules of warranties attached to the policy so far as they are material herein are as follows:

"Statement 1: Name of assured, American Packing Company.

"Statement 2: Address of assured, Biloxi, Mississippi.

"Statement 4: Kind of trade or business, all operations incidental to the business of cannery (no can manufacturing and no vessel hazard).

"Clerical office employees.

"Estimated number of employees is ——.

"Estimated compensation for period of policy, five thousand dollars.

"Premium rate per one hundred dollars of compensation, one dollar and thirty-three cents and six mills.

Five cents and five mills.

"The estimated compensation covers the compensation of all persons in the business carried on by the assured, at the locations mentioned in this schedule, including drivers and drivers' helpers (if no concurrent teams policy is carried with this corporation), and including the salaries or other compensation of president, vice president, secretary, treasurer, clerks and office employees, excepting as follows:

"No exception.

"Statement 10: The amount of compensation to employees for the twelve months to January 29th last, was five thousand dollars about."

It seems clear that the insurance was issued to cover any employee while within or upon the premises of the insured packing company by reason of the operation of the business, and this employment included the making of repairs necessary to the plant or any part thereof. But the insurance did not extend to injuries received by an employee through "vessel hazard," nor to any employee who was not in the designated class of employees named in the schedule whose compensation was included in the estimate as a

basis for the premium charged for the insurance. Therefore, if the injury was occasioned by "vessel hazard," the appellant assurance corporation would not be liable.

But we do not think the injury in this case was due to "vessel hazard" mentioned in the contract, because, as we understand it, the provision of "vessel hazard" injury means an injury received by an employee in the operation of a vessel, or while carrying on the necessary work of the plant through the operation of a vessel, and has reference to the risk of sea peril. The vessel upon which the injured employee was working at the time of the injury was an idle launch which was being repaired on the premises of the plant and was not in operation on the waters as contemplated by the contract.

But, more than this, the employee Breal was not injured while actually repairing the vessel, but received his injury by the top of a process kettle turning over on him within the building of the plant on the premises while he was engaged in the performance of his duty, incidental to and connected with the operation of the plant, as mentioned in the contract of insurance.

As to the second proposition presented by the appellant, we think that, under condition B in the contract, insurance against accident to the employee Breal was covered in the policy for the reason that his compensation, as one in the class of designated employees, was included in the estimated amount of compensation paid employees in the schedule upon which the premium was determined and charged. Therefore we are of the opinion that the insurance policy covered the risk of injury to the employee Breal as he was included as one of the employees in the schedule, and that his injury was not due to "vessel hazard," but was received while performing his duty in operations incidental to the business of the appellee packing company while within and upon the premises of the packing company.

*Affirmed.*